UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case Number: 25-MJ-244 |
| | : | |
| MARSHALL DAY, | : | |
| | : | Detention Hearing: October 21, 2025 |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Marshall Day under 18 U.S.C. § 3142(f)(1)(A). The defendant has been charged by Criminal Complaint in the United States District Court for the District of Columbia Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 USC § 2423(b), which is defined as a "crime of violence" pursuant to 18 U.S.C. § 3156(a)(4)(C). This offense is a crime of violence involving a minor victim and, as a result, there is a presumption that weighs in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(E). Under the factors outlined in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the safety of any person and the community if the defendant is released. As a result, detention is appropriate.

**BACKGROUND**

On Wednesday, October 8, 2025, an FBI Task Force Officer (TFO) working with the Washington Field Office was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation (MPD-FBI) Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, the UC entered a fetish

website. Different areas of this site are known to the UC as places where people meet, discuss, and trade original images of underage children, links containing child pornography. The UC posted a group message to the website stating that he was a 39-year-old single dad of a young daughter and that he was "open-minded." On October 8, 2025, a user with the screen name "KingDaddy89" and stating his location to be Largo, MD, later identified as Marshall Day, initiated a private message chat with the UC within the fetish website.

The following is the chat between DAY and the UC on the fetish website on October 8, 2025:

KingDaddy89: "How's it going? If you have a woman who's down for mfm.[1] I'm down to join. Let me know if you have someone or think you can find someone."

UC: "Where else do you like to chat"

KingDaddy89: "Telegram or KIK. Which one works for u?"

UC: "Telegram"

KingDaddy89: "Cool what's… ur name on there?"

UC: "@PervyRob what's yours so I know it's you"

KingDaddy89: "Im @KINGDADDY89 on telegram"

On Wednesday, October 8, 2025, the UC sent a message on Telegram to @KINGDADDY89, which used the screen name "Mike LeRoy," stating, "Hey it's Rob". The user responded, "Hey" "Im down for mfm or whatever u might be able to put together." The following is a portion of the text messages sent between the UC and DAY:

UC: "What kind of limits do you have, and are you in taboo because I have a girl in my life"

---

[1] 'Mfm' stands for 'male-female-male,' i.e. sexual activity with two males and one female.

DAY: "Im very much into taboo (devil emoji). No real hard limits"

UC: "I think we may like minded"

DAY: "I think so as well. When are you looking to have some fun? What are your limits with the girl in your life"

UC: "Absolutely no violence and no anal yet"

DAY: "I can respect that (100% emoji) Any pics? Free tonight?"

The UC then sent a photograph showing a young girl lying on her stomach in pajamas watching television. DAY responded with a 'fire' emoji.

UC: "Unfortunately not free tonight"

DAY: "When are you free?" "I would like to plan something asap"

UC: "She's with her mom today and tomorrow maybe Friday during day if you want"

DAY: "Ok thay works." "What area do you live in"

As the chat continued, the UC asked DAY, "Don't want it to be weird Friday so I want to make sure age is not going to be an issue," and DAY replied, "It won't be weird. Its not an issue for me."  The UC stated to DAY, "Ok and she's 9 and when we play it's more like a game you cool with that?"  DAY replied, "Yeah. How does the game usually go? So I know exactly what to do or say."  The UC responded, "Awesome usually tickling then move forward from there what would want to do? How far?"  DAY responded, "How far has she gone" and the UC replied, "Loves oral and she rides me."  DAY responded back, stating, "Nice I love oral".

During the chat, DAY asked the UC "Are you, or are you affiliated with law enforcement? This isn't some type of set up, is it?" The UC responded, "Fuck no I'm not". The

UC then sent a photograph of his purported penis and a pair of children's underwear. DAY stated, "Gotta be sure".

Later in the conversation, the UC asked DAY what DAY wanted to do with his daughter, stating "Ok cool I was asking what you wanted to do with her because I don't want any surprises with her." DAY responded, "Oh ok Oral is cool. We can work in to other stuff, the more I visit." Shortly thereafter, DAY asked the UC, "How do you keep her from saying anything to her mom? You said she's with her now... or is her mom also taboo?" The UC responded, "She knows it's a little game that's played with dads and friends." DAY responded, "Ok cool." The UC confirmed with DAY that DAY resided in Largo, Maryland, and stated "That's not to bad of a drive is it," to which DAY responded, "Not at all."

During the chat on Telegram, the UC messaged DAY his telephone number. At that point, the UC received a text message from the phone number 301-466-XXXX. A portion of the chat is as follows:

DAY: "Hey! Its Mike"

UC: "Hey Mike"

DAY: "Honestly happy we became friends. Can't wait til Friday"

UC: "Yeah" "Me too"

On October 9, 2025, the UC and DAY arranged to meet at 11:30AM in Washington, D.C. The UC stated to DAY, "I was thinking you said you were in Largo? Do you think they'll be any traffic issues for you coming into DC?" to which DAY replied, "It should be fine."

DAY asked the UC if other people responded to his post on the fetish website. The UC said he wasn't comfortable with other people who responded. DAY said, "I was gonna say no need to respond to the rest… because u found ur guy." The UC asked DAY if he wanted to do

"more than oral," and advised DAY to bring condoms if so. DAY responded, "You think she can handle more with me," "I think it might be too much with the condom… but u kno better than me what she can handle," "I would definitely take it slow." DAY later asked the UC, "Where should I finish when getting oral." The UC did not respond until the morning of October 10, 2025, texting good morning to DAY. DAY asked again, "But where do you usually finish, when playing."

On the day of travel, October 10, 2025, when DAY texted, "Having car trouble. I think I just need a jump." At some point DAY switches to considering using the Metro to travel into D.C. A portion of the chat from the phone number 301-466-XXXX. is as follows:

DAY: "Could we reschedule for maybe tonight? I can use my cousin's car tonight."

UC: "Damn man we leaving for the long weekend later tonight,"

DAY: "I do apologize. Please know that im not flaking."

UC: "The Metro can't work,"

DAY: "Looking for my smart trip card."

UC: "Any luck man? Seems like this is probably not happening?"

DAY: "May have to wait for u guys to return."

UC: "Ok that sucks but if you can't make it"

DAY: "I was ready. It's literally all I've been thinking about"

UC: "But the metro can't work?"

DAY: "Let me see how long it will take"

[*some messages skipped*]

DAY: Im just not a huge fan of riding the metro

UC: "OK well let me know if I'm staying and waiting or if you don't want to come either way just want to know man"

DAY: "Would you guys be willing to come to my place?"

UC: "Yeah not taking that risk with her we had a good plan let's just forget it man it's cool"

DAY: Fuck!  Im gonna get on the train.  Its about a 45 min ride. Can u meet me at gallery place."

DAY was identified using law enforcement databases. The phone number 301-466-XXXX was associated with Marshall Day, born on July XX, 1986, in numerous law enforcement citations and databases.  According to law enforcement databases, Day currently resides at XXXXX KINGS VALLEY CT BOWIE, MD 20721.  This is consistent with KingDaddy89 indicating his location was in Maryland.  Largo, Maryland is approximately a twenty-minute drive from Bowie, Maryland.

On October 10, 2025, at approximately 1:38 pm DAY arrived at the prearranged location and sat down next to the UC. The UC asked if he was 'Mike,' and DAY indicated that he was. DAY was placed under arrest at that point by members of the FBI/MPD Child Exploitation Task Force.

DAY's appearance matched his driver's license photograph in the DMV database.

Investigators conducted a custodial interview, at which time DAY waived his Miranda rights and agreed to give a statement. During the course of the interview, he admitted that he traveled from Largo, Maryland to Washington, DC to meet with the UC. He stated that he was not sure if the UC was involved in role-playing or not, and that if there was a real 9-year-old girl, he would not do anything sexual with her.

**ARGUMENT**

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

The crime of Travel with Intent to Engage in Illicit Sexual Activity, 18 U.S.C. § 2423(b), is a crime of violence involving a minor victim, which under 18 U.S.C. § 3142(e)(3)(E) creates a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the

court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that the defendant cannot rebut the presumption in favor of detention, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community, and that the defendant should therefore remain detained pending trial.

A. **The Nature and Circumstances of the Offense Charged**

As noted above, the defendant has been charged with a crime of violence. Moreover, the defendant's conduct was extremely serious. The defendant traveled from Maryland to the District of Columbia with the intention of sexually abusing a 9-year-old girl. He repeatedly described the abuse that he intended to perpetrate, discussing details like where to finish after oral sex. He made efforts to hide his illegal actions, asking the UC, "Are you, or are you affiliated with law enforcement?" and at one point messaging the UC, "How do you keep her

from saying anything to her mom? You said she's with her now... or is her mom also taboo?" Even when he had apparent car trouble, when the UC asked if he can't make it, DAY responded, "I was ready. It's literally all I've been thinking about." DAY persisted and took the metro to Chinatown when he learned his opportunity to abuse this 9-year-old girl was slipping away, and DAY would likely have succeeded, had he not been in fact communicating with an undercover law enforcement officer.

The facts in this case are similar to those in *United States v. Breeden*, where District Court Judge Amy Berman Jackson detained the defendant noting that "this defendant did not simply express an interest in a sexual encounter with a minor, and he did not simply make arrangements for a sexual encounter with a minor, but he took the affirmative, unequivocal step of driving his vehicle into the District of Columbia to arrive at the appointed time and place." *United States v. Breeden*, No. 15-MJ-0506 (AK-ABJ), 2015 WL 13310427, at *7 (D.D.C. Nov. 16, 2015). Moreover, the extreme dangerousness of this offenses is demonstrated by the fact that "but for the fact that defendant was communicating with an undercover officer, defendant could have come fact-to face with a minor and a willing parent." *Breeden*, 2015 WL 13310427, at *8.

Indeed, the charged offense both (i) is the basis for the statutory presumption of dangerousness and (ii) involves a minor victim, which are two factors this Court is required to consider in assessing the nature and circumstances of the offense. See 18 U.S.C.§ 3142(G)(1) ("The judicial officer shall . . . take into account the available information concerning— the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim . . . ."). *See Breeden*, 2015 WL 13310427, at *7 ("Congress specifically directed courts to consider whether a defendant is charged with a 'crime of violence' when assessing the nature and circumstances of the offense factor, and it designated

a violation of section 2423(b) to be a crime of violence."); *accord United States v. Johnston*, No. 17-MJ-0046 (BAH), 2017 WL 4326390, at *4 (D.D.C. Sept. 28, 2017) (noting that a violation of Section 2423(b) "is a serious crime" subject to a rebuttable presumption of detention); *United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 10 (D.D.C. 2011) ("With respect to the nature and circumstances of the offense, the charged offense is serious and involved traveling with intent to have sex with a twelve year-old minor victim. The Court finds that this factor supports detaining the defendant; indeed, it is the basis for the presumption in favor of detention.") The seriousness of the offense is also reflected by Congress's judgment that those convicted of the charged offense face up to 30 years' imprisonment upon conviction. *See* 18 U.S.C. § 2423(b); *Johnston*, 2017 WL 4326390, at *4 (considering, as factors weighing in favor of detention, that a conviction "allows for imprisonment up to 30 years" and that "the defendant may face substantial prison time").

Thus, the nature and circumstances of the offense weighs heavily in favor of detention.

### B.  The Weight of the Evidence Against the Defendant

The evidence against the defendant is strong. First, there is no question as to identity in this case; the defendant was arrested at the prearranged location and admitted to communicating with the UC. Second, the electronic communications clearly establish that the defendant's intent in traveling to D.C. was to sexually abuse the UC's purported 9-year-old daughter. His intent was further corroborated by his efforts to hide his illegal actions by confirming that he was not talking to law enforcement and ensuring that the mother of the 9-year-old child was either taboo herself or would not find out about DAY's abuse of her child.

Thus, the strength of the evidence weighs heavily in favor of detention.

### C. The History and Characteristics of the Defendant

The defendant has no criminal convictions. However, this does not equate to a lack of prior criminal conduct. The defendant was active on a website where he stated that he was "very much into taboo (devil emoji)" and that he has "no hard limits."  Moreover, the defendant admits to receiving child pornography via telegram from other telegram users.  While he told the law enforcement officers interviewing him that he would delete child pornography sent to him, he did not indicate that he ever reported the people distributing child pornography to him on telegram or provide any explanation as to why he is receiving child pornography on various occasions.  Thus, to the extent the defendant's lack of criminal history weighs in his favor, if at all, it does not do so strongly, and certainly not enough to outweigh all the other factors.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.  It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

The evidence here establishes that the defendant presents a danger to the community. Not only did the defendant travel from Maryland to Washington, D.C. in order to sexually abuse a young child, he did so by overcoming car trouble (finding a friend to give his car a jump, and, when that didn't work trying to move the time so he could borrow a car, and, when that didn't work, getting on the metro to make his way to Washington, D.C. to meet up with the father of this young child).  This conduct shows that not only does he have a sexual interest in children,

but that his actions are not confined to the virtual world and pose an articulable danger to real children. Thus, this factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant has not rebutted the statutory presumption in favor of detention, and should be detained pending trial.

WHEREFORE, the government respectfully requests that the Court grant its motion for detention of the defendant.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Richard S. Kelley*
Richard S. Kelley
DC Bar No. 1026390
Assistant United States Attorney
United States Attorney's Office
601 D St., N.W.
Washington, DC 20530
Phone: (202) 834-3571